## Bowman's Appeal.

Upon a proceeding in the orphan's court in partition, where the heirs refuse to take the real estate at the valuation, and the same is ordered to be sold, a guardian of one of the minor heirs may purchase the land at such sale for his ward, who will be bound thereby.

APPEAL by Samuel Bowman from the decree of the orphan's court of *Lebanon* county, confirming an account settled therein by the executors of his guardian, Henry Herr.

Henry Herr in his lifetime had been the guardian of Samuel Bowman, the appellant in this case, and two other of the minor children of John Bowman, who died intestate, leaving ten children, and seised of a valuable real estate.   The eldest son of the deceased, being the only one of them that was of full age, petitioned the orphan's court of Lebanon county, where the estate lay, for a partition and valuation of it.   A writ was accordingly awarded by the court for that purpose, to which a return was made in due form, that the estate could not be parted and divided so as to give to each child a separate and equal portion of the estate without injuring the value of it, but that it could be divided into four allotments, which was accordingly done, and an appraisement made thereof.   The eldest son, in person,

III.—WW

and all the other children, by their respective guardians, appeared in court and refused to take the estate or any part of it at its appraised value; whereupon the court, at the instance of the eldest son, decreed that a sale should be made of the estate by the administrators, as directed by the acts of assembly. A sale was accordingly made, at which Henry Herr, as the guardian of Samuel Bowman, the appellant, Joseph Bowman and Michael Bowman, three of the minor children of the deceased, in conjunction with Henry Ellenberger, as guardian of David Bowman, Nancy Bowman and Moses Bowman, three other minor children of the said deceased, bought ninety-eight acres and seventy-four perches of land, part of the estate, being much less however than the proportion of it belonging to their wards, at 82 dollars 66 cents per acre; and which same land had been appraised at 107 dollars per acre about three months before, under the writ awarded for that purpose.

The only question raised was, whether Henry Herr and Henry Ellenberger could make a purchase that would be binding upon their wards under the circumstances mentioned, which was argued by

*Foster* and *Elder*, for appellants, who cited, Bonsall's Appeal, 1 *Rawle* 266; Billington's Appeal, 3 *Rawle* 48; 1 *Vern.* 435; *Amb.* 417; 3 *Dess.* 31; Mills *v.* Dennis, 3 *Johns. Ch.* 367; Gochenauer *v.* Cooper, 8 *Serg. & Rawle* 204.

*Kline* and *Weidman*, for defendant in error.

The opinion of the Court was delivered by

KENNEDY, J.—This question must be decided by a reference to our acts of assembly on this subject. It is admitted that a guardian, under the intestate act of the 19th of April 1794, and the supplements passed thereto, may elect to take an allotment of the real estate in such case at the appraised value for and on behalf of his ward, and that the latter will be bound to take it; and if it should exceed in value his proportion of the whole estate, he will be bound to pay to the other children the excess in money, whatever it may be. Indeed this authority being expressly given by this act of assembly to the guardian, it would be vain to attempt to controvert it. The counsel for the appellant, however, seemed to argue this question as if the great and primary object of the legislature in directing a sale of the real estate of the intestate in such cases, had been to convert it into money for the sake of having it changed into personal, in preference to having it continued and preserved as real estate. But it is very evident from the various provisions contained in the several acts, that the principal and chief design was to preserve the real estate to the heirs, and as such to make partition of it among them in all cases where it would admit of it without impairing the value of the whole; and that it was only where this could not be effected that the legislature felt itself constrained, as it were, from necessity, in

[Bowman's Appeal.]

order to have an-equal partition made when insisted on by any one or more of the heirs, to permit the character of the estate to be changed from real into personal by selling it.    The legislature were too well apprized of the great difficulty there is in preserving personal estate from loss, above what usually attends that of real, to authorize the conversion of the real estate of minor and orphan children into that of personal, without some very cogent necessity for it. Hence it was required by the act of the 19th of April 1794, the first law now in force on this subject, that the real estate of which an *intestate* leaving children died seised, should, in case of an application by any of the children to the orphan's court of the county in which it lay for partition, be divided into as many equal parts as there were children, of which the sons were to choose their parts first, according to seniority, and next the daughters in like manner; but in case such partition could not be made " without prejudice to ·to or spoiling the whole," then the estate was to be appraised ; or in case it could be divided without injuring its value, so as to accommodate two or more of the heirs, then it was to be so divided, and each part of such division to be appraised, of which the sons were to have their choice of taking in the first place, according to seniority of age, and after them the daughters in the same order; paying, however, if they took the estate, to the other children ·or heirs, their respective proportions of the valuation money : but if all the children in these two last cases refused to take the estate, or any of its parts, at the valuation made thereof, then it remained a tenancy in common to be held by them as before; until they, by agreement, should make some different disposition of it.    This, however, could not be done as long as any of them were minors, although the guardians of such as were minors had the power to choose for their wards in the proceeding authorized by this act.    By this means the guardian could take the whole of the real estate for his· ward, and apply the personal estate of the latter to paying the other heirs their respective proportions of the valuation money : and thus he might convert the personal estate of his ward into real, and in effect purchase the interest of the other children in the real estate which descended to them in common from their father ; but in no event whatever could it be sold to strangers from the children under this act.

Thus stood the law until 1804, when the legislature, on the 2d of April in that year, passed a supplement to the act of 1794, authorizing the orphan's court in cases where the estate had been, or should be, appraised, but could not be divided according to the provisions of this act, and the children were, or should be, unable or unwilling to take it at the appraisement, to make an order commanding the executors or administrators to sell it.    This supplement, however, not extending to authorize a sale where the estate had been, or might happen to be, divided into fewer parts than there were children, accompanied by an appraisement thereof as directed by the act of 1794; the legislature again, on the 7th of April 1807, passed another sup-

[Bowman's Appeal.]

plementary act, giving authority to the orphan's court to decree a sale of all, or as many of the said parts as should be refused to be taken by the children or representatives of the deceased.

From the course then of legislation on this subject, as well as from the various provisions contained in the several acts passed in relation to the same, I think it may be fairly inferred that the legislature never intended that the real estate of an intestate should be converted into money, except where it could not be divided equally among all entitled to it, and when it did not, in the opinion of those of full age so entitled, and in the opinion of the guardians of such as were under age, comport with their best interests to take the estate at the valuation fixed upon it. Hence, to meet the spirit and intention of the legislature, it would rather seem to be the duty of the guardian to take that portion, at least, of the real estate, to which his ward is entitled, in kind, when he can obtain it at such valuation or price as he shall think reasonable, and will at the same time suit the circumstances and ability of his ward. That he has such power, and may exercise his own discretion under it, in regard to taking or refusing to take at the appraisement made in pursuance of the writ awarded by the orphan's court, is not denied, and indeed cannot be doubted. Neither do I think it can be questioned, upon a fair exposition of the acts of assembly in this behalf, but that it is the duty of the guardian to take the land for his ward at the appraisement, if he thinks it not too high, and that the interest of his ward will be thereby advanced and promoted. And although it be proved afterwards by the course of subsequent events, that he was mistaken in his opinion as to what was best to be done in this respect for his ward, yet if he acts honestly he will be acquitted of blame. Generally, in such cases, the correctness of the guardian's conduct is not to be tested by whatever may happen to be the result of it, at any subsequent period. But if he should happen to think the appraisement too high, it would then doubtless be his duty to decline taking the estate for his ward; and if a sale should be ordered at the instance of some one or more of the heirs, after they have all, for the same or some other reason, refused to take at the appraisement, why is it not equally the duty of the guardian to take the land for his ward, at any subsequent stage of the proceedings, when it shall be offered at a reduced price from the valuation, and such as he would have felt himself bound to have taken it at for the benefit and advantage of his ward in the first instance, had it been appraised at it? In the present case the guardians obtained a portion of the estate, at the sale, for a price nearly twenty-five per cent below the appraisement, which was only made about three and a half months before. This was certainly strong evidence, at the time, to satisfy them that in buying it for their wards, they were only preventing it from being sacrificed. The exercise of such power and discretion on the part of the guardian, appears to me to be not only consistent with the true object and meaning of the several acts, but indispensably necessary, in order to prevent, often-

[Bowman's Appeal.]

times, a sacrifice of the interest and estate of his ward. Where there are several children interested in the estate, the sale cannot be controlled by any one of them, or by his guardian if a minor. For this purpose they must all unite, which is not always practicable; and hence the guardian must either be permitted to buy at the sale for his ward, or the estate may be sold from him for less than half of its real value. There is some reason too to apprehend that this may frequently be the case, when we reflect that real estate is not like many articles of merchandize, for which you may find a purchaser at a fair price in the market almost every day; because we know from experience, as well as from the nature of the thing itself, that it is only occasionally that a purchaser for real estate is to be met with who is willing and able to give what those acquainted with its value may think it reasonably worth.

It has also been argued by the counsel for the appellant, as if the purchase by the guardian, in this case, were a conversion by him of the personal estate of his ward into real; and there being no act of assembly to authorize it, the ward is therefore not bound to accept of the land. There would be great force in this objection; and perhaps it would be difficult to get over it, if the fact were only so. But instead of its being so, it was quite the reverse: for by making the purchase, the guardian preserved to his ward the real estate, which as such had descended upon him from his father, and thereby prevented its being changed from real into personal estate.

It is likewise a rule of the common law, that whatever a guardian does for his ward, which in its nature is manifestly for the benefit of the latter, he will be bound by it. The act of assembly then having authorized the guardian to take the real estate in such case at the appraised value, for his ward, has thereby decided that it is for the benefit of the minor that he should do so, if he thinks otherwise prudent, in which he is left entirely to the exercise of his own discretion; but how much more must it necessarily be for the benefit of the infant, where the guardian, as in this case, obtained the estate for him at almost twenty-five per cent less than the appraisement. From the view which I have taken of this case I am satisfied that the decree of the orphan's court ought to be affirmed.

Decree affirmed.