## Merkel's Estate.   Merkel's Appeal.

[Marked to be reported.]

*Decedent's estates—Lien—Statute of limitation—Advance of money for payment of debts—Act of February 24, 1834.*

An administrator who advances his own money to pay the debts of his intestate must use the methods provided in the act of Feb. 24, 1834, to preserve a lien for his advances against the intestate's lands. If he fails to do so, and there is no waiver by the heirs of the statutory limitation of the lien as to the land itself, the administrator cannot, after the expiration of five years, recover his advances from the land.

*Advances by guardian to preserve ward's real estate.*

A guardian who has advanced money to pay off liens upon his ward's real estate, and by such advances has actually preserved the land for their benefit, is entitled to be reimbursed out of a fund raised by the sale of the real estate more than five years after the advances were made. In such a case the act of Feb. 24, 1834, does not apply.

A decedent died leaving but a small amount of personal property, and debts equal in amount to the value of his real estate. In order to preserve the real estate as a home for the widow and children, the guardian of the children advanced from his own funds a sum sufficient to pay off the creditors who were most urgent. The other debts were gradually paid off out of income, and the children had support and maintenance from the land. When the youngest child came of age seventeen years after the death of decedent, the land was sold: *Held*, that the guardian was entitled to be reimbursed for his advances out of the proceeds of the sale.

Argued Feb. 28, 1893.   Appeal, No. 173, July T., 1892, by Sarah Ann Merkel, administratrix of John Merkel, deceased, and Charles Folk, guardian of the minor children, from decree of O. C. Berks Co., dismissing exceptions to adjudication. Before STERRETT, C. J., WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ.

Audit of account of Sarah Ann Merkel, administratrix of John Merkel, deceased.

The facts as found by the auditing judge, BLAND, P. J., are stated in the opinion of the Supreme Court.

The auditing judge refused to allow the claim of the accountant for advances which she had made to the amount of $1,360 to pay off debts of decedent. He also refused to allow the claim of Charles Folk, guardian of decedent's minor children,

for $5,479.59, moneys advanced to pay off liens on the real estate of decedent.

Exceptions filed to the adjudication averred, inter alia, that the court erred:

"2. In finding that the market value of his real estate at the time of John Merkel's death was from $15,000 to $18,000." [1]

"4. In finding in the 14th 'Finding' that the accountant received 'more than sufficient to have paid in full all of the said indebtedness of the estate at the filing of the first account.'" [2]

"5. In finding 'that by the exercise of reasonable and ordinary care all the said debts of the estate might have been paid by the accountant by the application to them of the royalties and proceeds of farm products.'" [3]

"6. In finding 'that there never was any agreement between Peter Merkel and Harvey Merkel, or either of them, with the administratrix or Charles Folk, that in case the iron ore royalties and farm products did not reach to pay the debts, that the proceeds of the farm should be used for that purpose; and that the only agreement ever had with any of the heirs upon that subject is expressed in the releases of Albert Merkel, Harvey Merkel, Catherine M. Merkel and William Merkel, wherein and whereby they ratify the application of the royalties, as they had been applied by the accountant and Charles Folk, and authorized the application of all royalties thereafter to be received in the same manner.'" [4]

"7. In finding 'that the administratrix, either having received personally or through her authorized agent, Charles Folk, sufficient moneys from royalties of iron ore and proceeds of farm products to pay all the debts of the decedent and to reimburse herself and Charles Folk for any advance or loans to the estate to pay decedent's debts, she is not entitled to apply the purchase money of the real estate to the payment of debts of the decedent, or the reimbursement of said Charles Folk for moneys alleged to be due him from the estate.'" [5]

"8. In finding 'that five years after the death of John Merkel, i. e., the 23d day of August, 1877, the debts of the decedent ceased to be a lien on his real estate; and nothing was done either by the administratrix or Charles Folk, or the heirs of John Merkel, to entitle the administratrix or Charles Folk to

a lien on the real estate of the decedent after five years from his death.'" [6]

" 9. In finding 'that the accountant is entitled to no credits in her account filed upon the proceeds of the real estate excepting the expenses incident to the partition and sale.'" [7]

"10. In distributing any balance to the heirs of John Merkel, deceased." [8]

" 11. In ordering and decreeing 'that Sarah Ann Merkel pay the shares of the widow and heirs of Peter Merkel and the widow and heirs of Harvey Merkel.'" [9]

" 12. In failing to dismiss the several exceptions to the accounts adjudicated." [10]

The court dismissed the exceptions and entered a decree of distribution in accordance with the adjudication.

*Errors assigned* were (1–10) dismissal of exceptions, quoting them.

*Jefferson Snyder, Howard P. Wanner* and *Philip S. Zieber* with him, for appellant.—When a guardian advances his own money in payment of debts or expenses of his ward under such circumstances as render that course of proceeding proper, he is entitled to interest on the money so advanced.

The powers of a guardian are not defined with any great definiteness. In the management of his wards' estate he is undoubtedly to be regarded as their agent and what he does for their benefit is their act. His possession of their estate is their possession : Manson v. Felton, 13 Pick. 206.

A guardian has a right to redeem his ward's estate from a mortgage sale : Marvin v. Schilling, 12 Mich. 356. A guardian may bind his ward by accepting real estate : Gelbach's Ap., 8 S. & R. 205.

Where, under the circumstances, it was manifestly for the benefit of the ward, at the time, to convert his personalty into real estate, a guardian was held to be justifiable in so doing, although subsequent and unexpected events rendered the measure injurious to the ward : Bonsall's Ap., 1 Rawle, 266. A guardian may purchase real estate and bind his ward at a sale in partition proceedings : Bowman's Ap., 3 Watts, 369.

In Woodward's Ap., 38 Pa. 322, a ward's estate was held

subject to indemnify the guardian for a liability incurred on behalf of that estate.

In Myers v. Kingston Coal Co., 126 Pa. 582, it was held: If a minor with full knowledge of what had been done in his name for many years, after his majority ratified it, the constitutionality of the special act authorizing a lease of his coal lands while a minor is immaterial; having accepted the benefits of it after coming of age, whether it is done with or without authority, he is held estopped from disputing its validity.

A guardian is entitled to credit for moneys advanced to his ward to enable him to complete a medical education: Smith's Ap., 30 Pa. 397. A guardian who advances to his ward the amount secured to the ward by a recognizance given by another, is entitled to subrogation on the recognizance: Kelchner v. Forney, 29 Pa. 47. In Hart's Est., 4 Klup, 14, it was held that a guardian having rents in hand should pay the decedent's debts, if necessary, to prevent a sale.

Mrs. Merkel's claim is good under Wallace's Ap., 5 Pa. 103.

*D. N. Schaeffer*, *F. K. Flood* with him, for appellee.—The accountant and her agent, Mr. Foulk, have been paid for all moneys that they ever advanced, or if they were not paid, they have had ample means in their hands out of which they could have paid themselves. This the court below has found to be correct. The finding of the facts by the court below is no ground for reversal unless for plain error: Kisor's Ap., 62 Pa. 428; Sproul's Ap., 71 Pa. 137.

The administrator by being a creditor, or making himself so in consequence of his advancing money out of his own pocket to pay off debts due by the intestate, cannot place himself as to the real estate in a better situation than other creditors: M'Curdy's Ap., 5 W. & S. 399: Loomis' Ap., 29 Pa. 237; Demmy's Ap., 43 Pa. 155.

It is very evident, therefore, that, unless the administratrix or guardian had a lien on the real estate at the time it was sold, that this fund was correctly distributed to the heirs. It is not contended that they took the usual steps, required by the act, to preserve the lien beyond the period of five years from the date of the death of the decedent. Evidence of a waiver of the statutory limitation must be incontrovertible: Wallace's Ap., 5 Pa. 103; Welsh's Ap., 10 Atl. R. 34.

OPINION BY MR. JUSTICE DEAN, April 17, 1893:

John Merkel, of Longswamp township, Berks county, died intestate August, 1872, leaving a widow, Sarah Ann Merkel, and five minor children, Peter, Albert, Harvey, William, and Catharine; Peter, the oldest, was aged about sixteen years at his father's death, and William, the youngest, about three years. The widow took out letters of administration; Charles Folk, her brother, was appointed guardian of all the children.

The intestate's personal estate, principally farm stock, was valued at $1,072.54. He owned the farm of sixty acres on which he lived; this was worth at the date of his death about $14,000. He owned no other property. His debts were about $14,000, so that if all his property had at once been turned into money for purpose of paying the debts, the estate was but little more than solvent.

But the land contained iron ore, and just before his death Merkel had executed a lease to one Zeigler to mine it at a royalty; it appeared, then, that this contract, if carried out, would probably yield a very considerable income, and if the creditors did not press for immediate payment the farm might be saved, and remain as a home for the widow and minor children. The guardian, Mr. Folk, at once proceeded to placate importunate creditors, and succeeded in persuading most of them to suspend demand for immediate payment.

It was then agreed between him and the administratrix, under the advice of reputable counsel, that she should remain in the occupancy of the farm, and rear the family until the youngest attained majority. In the meantime the income of the farm, both from crops and ore royalties, not necessary to the maintenance of the family, was to be applied to the payment of debts, with the hope that the farm itself would eventually be altogether freed from debts.

This, then, was the condition of affairs confronting this accountant and guardian in 1872: A widow and five minor children. The whole estate, a small farm and stock, worth about the debts against them.

With this agreement between themselves, they undertook the task before them, and for more than seventeen years managed the farm and the ore leases, receiving and applying the money towards the payment of the debts and the maintenance

and education of the children. The money received by the administratrix from ore royalties and farm products during this period amounted to $19,117.40. As no exceptions were filed to the account in this particular, and as the court below has found this was the amount received, it must be taken as true, that this was every dollar that came into her hands. She honestly charged herself with all the money received from farm products and ore royalties during this seventeen years, and with all she ought to have received.

After the youngest child came of age, January 17, 1890, proceedings in partition were instituted which resulted in a sale of the land to Charles Folk for $7,122. The accountant was appointed trustee to sell, and thus received the purchase money, which, in addition to the crops and royalties, made altogether money received $26,239.40. This pays all the debts, but nothing is left. The administratrix filed four accounts; the first, October 23, 1877; in this the balance due the accountant is $6,839.59. It is made up of two items, $1,360 advanced by herself to pay debts of her husband, and $5,479.59 advanced by Charles Folk, the guardian, for the same purpose. The accountant advanced the $1,360 in this way: Her father, Daniel Folk, was one of the largest creditors of her husband, there being due to him over $4,000; before filing the account he had died, and she, as a distributee of his estate, was entitled to $1,360. This she permitted to be credited as a payment on the debt due from her husband. Charles Folk, the guardian, had advanced money of his own to pay creditors who could not longer wait, to the amount of $5,479.59. This account was confirmed absolutely, no exceptions being filed to it.

The second account was filed May 10, 1881. In this, the balance due her is $6,886.76, made up of the same two items as in the first, the change in amount resulting from computation of interest. This account was also confirmed absolutely.

The third account was filed on the 22d of April, 1886; the balance in her favor then was $7,984.13. Peter, the oldest son, having died in 1885, his administrators filed exceptions to this account and asked that the accountant be charged with all the rents and royalties received, on the ground that they were legally payable to the widow and heirs and should not have been used to satisfy the claims of creditors. These exceptions were never heard, nor was there any adjudication of the account.

After the sale of the real estate, the administratrix filed her fourth and final account on January 21, 1891. In this she charges herself with rents and royalties received since filing her third account, $4,465.37, and the amount of purchase money on real estate, $7,122; altogether $11,587.37; then she takes credit for a number of small payments, and also for balance including interest due her on the third account, $7,984.13. To this account the administratrix of Harvey Merkel, one of the sons, who had also died since the previous account, filed exceptions in which she was joined by the administratrix of Peter Merkel. The exceptants objected to all credits claimed by accountant for payments of debts out of rents and royalties of the land, alleging that these belonged to the heirs; and further objected to the credit taken by accountant for balance of $7,984.13 on third account; and especially objected to accountant applying any portion of the proceeds of sale of the real estate to the payment of debts of decedent, which had long before lost their lien upon his lands.

The account came before the orphans' court for adjudication, and after full hearing the exceptions were sustained to this extent: It was held that no portion of the proceeds of sale of the real estate could be applied to the advances made by the administratrix or guardian, for the reason that under the act of the 24th of February, 1834, the debts set up against the estate of decedent by the accountant and the guardian had ceased to be a lien on the land at the expiration of five years from his death, no action for the recovery thereof having been commenced or prosecuted against the heirs and personal representatives.

So far as the statute is applicable to the facts here, the conclusion of the learned judge of the orphans' court is right. We assume that the finding of the fact, that there was no waiver by the heirs of the statutory limitation of the lien as to the land itself, is correct. This administratrix advanced $1,360 of the little sum coming to her from her father's estate, to pay her husband's creditors; she took none of the methods pointed out in the statute to preserve the lien against the husband's land; therefore, great as is the hardship, her neglect must be visited with the statutory penalty; she must lose it. Advancing the money herself gives her no higher claim than any other creditor⋅ McCurdy's Ap., 5 W. & S. 399; Loomis's Ap., 29 Pa. 237.

The case in 5 Pa. 103, Wallace's Ap., cited and relied on by appellant, only holds, that, where the evidence incontrovertibly shows the heirs have waived the limitation of the lien under the statute, the administrator is entitled to reimbursement out of the land even thirty-three years after the death of the intestate.

The orphans' court has found there was no waiver here, as to the land itself, but that as to the products of the land there was an agreement by the excepting heirs, or those they represent, after coming of age, that these should be applied to payment of the debts.

We adopt the finding of fact as to the widow's claim as conclusive, because we cannot say it is manifestly erroneous; but this does not bar the claim of the guardian. His debt stands on other ground. This is the fact found by the orphans' court:

" 8. That soon after the decease of John Merkel it was agreed between Sarah Ann Merkel, his widow and administratrix, and Charles Folk, the guardian of the children of the said John Merkel, that the administratrix should live on the farm with her family of five children, and farm it, and should lease the iron ore mines on the farm, and that from the surplus products of the farm and the royalties received from the iron ore leases the debts of the decedent should be paid; and that this should be done until the youngest child should attain the age of twenty-one years, if the debts were not sooner paid, and that the farm should be preserved to the children."

The farm, subject to the lien of all the decedent's debts, had descended to his children. It was the right of the creditors to insist that it be sold to satisfy their claims; if it had been sold, the guardian would have been entitled to any surplus over and above the debts; this it would have been his duty to expend in their maintenance and education. But he in his discretion adopts another course; by an arrangement with the administratrix, their mother, he provides a home for them on the farm, where they shall be under the same roof in one family, clothed, fed, and taught, until the youngest has attained majority. To accomplish this purpose, he advances from time to time out of his own pocket over $5,000 to creditors. The representatives of two of these wards object to repaying him out of this fund; they do not deny the guardian paid the debts of the father, but they argue that such payment at best gave him

only a right of subrogation to the creditor's claim, and this at the expiration of five years ceased to be a lien on the land, and therefore cannot come in on this fund.

If the guardian had paid this money directly to feed, clothe, and educate his wards, it could hardly have been pretended he would not have had an equitable right to repayment out of the wards' estate; in such case it would have been indisputably their debt; not being a debt of the decedent, their father, the act of 1834 would have had no application. This is, in substance, just what the guardian did do; or, to state it differently, if in 1872 he had gone into the orphans' court with a petition, setting out the facts just as it now is established they existed then: the desirability of preserving the farm as a home for his wards under the care of the mother during minority; the imperative necessity of advancing money to pay pressing debts; his willingness to advance and take on himself the risk of the venture, that court would, without doubt, have made a cautionary order authorizing him to do just as he has done. Such an order would not have prevented the wards from investigating his accounts, but it would have precluded them from questioning the nature of the transaction; would have fixed any payments made by the guardian to their father's creditors as payments for the wards. What the court could have authorized, it can subsequently ratify. The only question is, was the money honestly advanced by the guardian for the purpose of rearing his wards? If so, it was their debt and not their father's.

We look in vain through the testimony for the disclosure of any other purpose than that stated by the guardian. He says: "On the 30th of January, 1873, I paid the biggest portion of the small debts, there being of course a good many large ones among them. I used the money of the estate, royalties and products, and my own money. All the money that I could spare of my own and from the proceeds of sales of royalties and products, I used to pay the debts, and charged myself with every dollar that I ever received. Not one dollar do I have in my possession that I am not charged with in the accounts that are filed. In the meantime the family was supported out of the income of the farm and royalty, and what was not there I bought. I did this because I thought the children would have

a home, could be raised by their mother, and the mother would have a home also. The ore mines were not worked all the time. They remained idle for some time. The children remained at home until grown up, and until some of them were married."

Taking this as true, and it is not contradicted, the guardian's right to thus deal with the estate for the benefit of his wards cannot be questioned; and the debts paid by him constitute a claim, not against the father's estate, but against the wards'.

We have held that a guardian may redeem his ward's estate from a mortgage sale; he may bind the ward by accepting real estate at an appraisement; may convert the ward's personalty into real estate where it is manifestly to his benefit, and the correctness of his judgment is not to be tested by whatever may happen at a subsequent period: Gelbach's Ap., 8 S. & R. 205; Bonsall's Ap., 1 Rawle, 266; Bowman's Ap., 3 Watts, 369. In Woodward's Ap., 38 Pa. 322, a guardian had incurred a personal liability for payment of a mortgage by purchasing real estate for her ward under the approval of the orphans' court, subject to the lien of the mortgage, and we held on the distribution of the proceeds of the sale of the real estate after the ward's death, subject to the same lien, that the guardian had a right to indemnity against personal liability, before payment of the purchase money to the heirs. In this case, Justice STRONG, in delivering the opinion, said: "We see a guardian in court, asking indemnity out of a ward's estate against a liability lawfully and properly incurred, and we are of opinion that before the estate passes out of the control of the court that indemnity should be secured."

So here, in the orphans' court, having ample equity powers, we have for distribution a fund realized from the sale of real estate; a guardian asks that he be reimbursed for money expended by him to preserve this same real estate for the benefit of the wards. It is the duty of the court to protect the guardian before the fund passes from its control.

The learned judge of the orphans' court, in his conclusions of law, says: "By some mysterious management, notwithstanding the fact that the enormous sum of $19,117.40 was realized in money from the productive resources of the farm in royalties and farm products, the balances due the accountant were steadily maintained."

The insinuation here seems scarcely warranted by the fact on which it was based. State a suggestion from the same facts in another form, and it sounds certainly as plausible: By some mysterious management, a widow with five minor children was able to maintain herself and them during minority for seventeen years on a little farm yielding less than $1,200 a year, and besides pay off, including interest, debts of her husband of over $9,000.

If there was any mismanagement or dishonest collusion between this uncle and mother to wrong these children, it should have been found as a fact, and the evidence to sustain the finding should have been pointed out. Such a fact would have warranted the imposition of a fine upon this guardian of $5,479.59. But there is no evidence of any such fact. True, the gross receipts in seventeen years were $5,000 more than the $14,000 of debts existing at John Merkel's death. The observation, however, of those who administer estates so nearly insolvent as this one, is, that interest and expenses rapidly accumulate. If the final winding up be delayed that debts may be paid out of income, necessarily, the amount paid will largely exceed the amount at death of the debtor. Simple interest on this $14,000 would have nearly doubled it in sixteen years; if the debts remained unpaid for an average period of only five years, they would have increased to over $18,000. There was paid on Hettie Merkel's claim alone $1,293.28 of interest, much of it accruing after death of her brother. If to the interest charges, certain as doom, there be added the expenses incident to management and administration, maintenance of the family during minority of the children, taxes and repairs, the inference is, that without capable, vigilant management the end in view at the start, payment of all decedent's debts and rearing of his children, would never have been accomplished.

Nor does the fact, that now but little is left for the children, at all tend to show that they would have been better off had the farm been immediately sold. If it had brought no more than the debts, which from the evidence is very probable, the widow and children would have been left destitute. If it had brought two or three thousand dollars more, as exceptants think it ought to have brought, they have received in value

far more than that sum.    The eldest had five years to majority,
the youngest seventeen years ; if the average support from the
farm was only nine years to each, that was nine years of ad-
vantage and comparative comfort, which the guardian could
not have obtained for them with any surplus purchase money
from sale of the farm.

We have examined carefully the testimony in this case ;
there is no fact found by the court below which should deprive
this guardian of the money advanced by him.    His arrange-
ment with the administratrix, the purpose in view, the object
accomplished, all demand that it should be paid back to him.
His conduct ill deserves the imputations cast upon it ; through-
out it was unselfish and commendable.

The appellant's assignments of error, and the adjudication
of the court, both treat the claims of the administratrix and
guardian as resting on the same foundation.    They do not ;
the one paid her money voluntarily to discharge her husband's
debts, and did nothing to continue the lien.    On the facts as
found by the court, it cannot be paid out of the fund realized
from a sale of the land.    The guardian, however, advanced his
money to save the land of his wards for their benefit ; he is en-
titled to payment out of the fund, with interest.

To this extent the assignments of error are sustained and
the decree is reversed, with directions to the orphans' court to
make distribution in accordance with this opinion.