# Tritt *versus* Crotzer.

13    451
210    ²243

A trust may be created and proved by *parol*.

The evidence to sustain a parol declaration of trust ought to be of weight and substance, and be scrutinized with care. A party may demand a jury trial; but the conscience of the *court* is to be satisfied, as well as that of the jurors, as the court and jury, together, stand in the place of the chancellor; but when the conscience of both is satisfied, the conclusion of fact is final, if made upon competent testimony.

The declarations of the person who created the trust, made in the absence of the trustee, are *not* competent alone *to establish a trust;* but when the trust has been established by competent evidence, such declarations are admissible to designate the beneficiary or cestui que trust.

Treachery and fraud are not compensated in law; and, therefore, where a trustee denies the trust, he will not be entitled to the extension of payment of the trust funds, to which he would have been entitled if he had acknowledged the trust, and faithfully performed his duty.

The cestui que trust can maintain suit, in his own name, against the trustee, without the intervention of an administrator of the estate of the person who created the trust, unless the administrator appears and interpleads in the suit.

The trust will not be invalid if the fund were transferred by the owner, to defeat the collateral inheritance tax. The fund would be liable to taxation in the hands of the cestui que trust.

Indorsements on the trust bonds of payments on them, are evidence in favor of the plaintiff, to shew that the bonds were *in the possession of the trustee* at the time the indorsements were made. They are not evidence in favor of the trustee, that the payments were actually made.

ERROR to the Common Pleas of *Cumberland county.*

This was an action on the case, by Crotzer and Elizabeth, his wife, and Howard Smith, by his next friend, Crotzer, *vs.* Tritt.

It was alleged, in the declaration, that Tritt had received from a certain Nicholas Howard, in his life time, certain moneys, notes, bonds, mortgages and other securities for money, for the use and benefit of Elizabeth Smith (now Crotzer) and Howard Smith, and to be transferred, assigned and delivered to them, by Tritt, at the decease of said Nicholas Howard.

Evidence was given that Nicholas Howard had said, in 1847, that he had handed his money and papers over to Tritt; that he was getting feeble and old; as he was not able to transact his own business, he had given it to Tritt to manage for him; and said the witness might call on Tritt. Witness wanted to borrow some money. Tritt was called on, told what Howard had said, and the witness said he wanted $300. Tritt stated that if his brother did not need the money, the witness and others could get it. The witness did not get the money.

Dr. Wilson was called, who stated that, in 1847, Howard said to him, that he had signed his money and papers to Tritt, for safe-keeping for "my Lizzey and Howard Smith; in the neighborhood of 1,800 or $2,000."

Other testimony was given of admission of Tritt, in 1847, of having money of Howard's in his hands.

After the death of Howard, defendant *denied* the trust.

Howard died in November, 1847.

It was proved that Howard said he "wanted to leave his things in such a way, when he was gone the state could not get hold of it; for it was an unjust law, that the state would take five per cent. of a man's estate."

It was shown, by the evidence, that about the time the money and securities of Howard were assigned to Tritt, that Tritt executed and delivered to Howard, two bonds, each dated 15th August, 1846, and each for the payment of $848—one payable 1st April, 1847, the other 8th August, 1847; and that, *on the same day*, Howard executed and delivered to the said Tritt, an instrument of writing, written by himself, the said Howard, in which he bound himself to defend and indemnify Tritt; that if the mortgage and promissory note upon Derr hold not out to be good for $800, and the judgment upon McCord hold not out to be good for $800, then the said Tritt, his heirs, &c., is not to pay more than what can be recovered of the two men named; and that Tritt, his heirs, &c., shall have a lawful recompense for the trouble they shall be at. And if he (Howard) should not live to have this matter settled, his desire was that these debtors should have two years after his death before they were sued; and that Tritt "is to have four years after my death to pay the money to my heirs, or executors, or administrators."

On these bonds from Tritt to Howard were indorsed certain payments, to wit: on that payable 1st April, 1847, are the following; 2d January, 1847, principal $93 17—interest for nine months $4 19½; 5th April, 1847, $50 64½;—on bond due 8th August, 1847, is indorsed, 12th August, 1847, $100 00.

The plaintiffs below offered in evidence these indorsements, which were in the handwriting of Tritt, for the special purpose of establishing the fact that the bonds were *in Tritt's possession* at the time the payments were made; and the evidence was thus specially admitted by the court. The defendant's counsel contended that these indorsements, if offered for the plaintiffs, were evidence for every purpose.

To the admission of this evidence, a bill of exceptions was sealed.

A judgment in favor of Howard *vs.* McCord, for $852 20 and interest, was given in evidence; and an assignment of $800 of it to Tritt, on 8th August, 1846. 10th August, 1846, receipt of N. Howard, "for $78 88, the amount due on the judgment." 14th May, 1847, receipt of Tritt for $836 26, in full of debt and interest. Also, $1 12½ plaintiff's costs.

Mortgage book F, page 16: mortgage Derr to Howard, in the

penalty of $1,800. Condition, payment of $400 1st April, 1835, $100 April, 1836, and so on, each year, till 1840, inclusive. 8th August, 1846, the balance, $706 83, with interest 1st April, 1846, assigned to Tritt.

It appeared that Howard was a surety in a note on which sixty dollars were due and unpaid.

His funeral expenses amounted to about forty-three dollars and seventy cents.

The plaintiffs in the suit are grand-children of Nicholas Howard's wife, through her first marriage; and it was alleged that defence to a recovery was made by the heirs of said Howard.

Defendant's counsel asked the court to charge jury—

1st. That the declarations of Nicholas Howard, made to third persons, and not communicated to Samuel Tritt, nor assented to by him, are not evidence in this suit.

2d. That this is especially so when such declarations are inconsistent with, and contradict the written agreement and declarations of the said Howard, dated the 15th Agust, 1846, and signed and sealed by him, in the presence of two witnesses, wherein he declares how and when the money in controversy is to be paid and distributed.

3d. That parol declarations of a trust are to be received with great caution, because they are easily fabricated and difficult to contradict; and for the further reason, that the slightest mistake of recollection may totally alter the effect of the trust.

4th. If, therefore, the jury believe the testimony of Dr. Wilson, in 1847, that Howard told him, "that he had signed his money and papers all to Mr. Tritt, for safe-keeping, for my Lizzy and Howard Smith," the same cannot prevail against the written declaration of the said Howard, executed a few days after said money and papers were assigned to Tritt.

5th. That any declarations of Nicholas Howard, that he would leave something to the plaintiffs in this suit, or that he intended to leave them his property, will not entitle them to recover in this action.

6th. That there can be no recovery by the plaintiffs in this case, in the face of the paper executed by Nicholas Howard, and delivered to Tritt, in which it is stipulated that said Tritt is to have four years after said Howard's death to pay the money claimed by plaintiffs in the present action.

7th. That if the jury belive all the evidence on the one side and the other, it is too vague, uncertain and contradictory to establish a legal trust, and plaintiffs cannot recover.

8th. If the court are against us on the foregoing points, then we respectfully ask them to charge, that if the jury believe that papers and money were placed in the hands of Tritt, to keep for Elizabeth and Howard Smith; and that the purpose of so placing

[Tritt *v.* Crotzer.]

them was that the state should not receive the collateral inheri-
tance tax; and that the payment of certain liabilities of Nicholas
Howard, as the bail of John Moore, should be avoided; and that
one of said liabilities still remains unpaid; and other debts of
said Howard are still outstanding; and the fund in controversy is
all the estate remaining of said Howard; then his administrator,
and not the present plaintiffs, can alone sustain a suit for its re-
covery.

WATTS, President, charged the jury relative to the first and
second points, that the declarations of Howard were not sufficient,
in law, to charge the defendant with the receipt of the money or
choses in action; but if the jury believe, from other independent
evidence, that the defendant did receive the money and property
of Howard, as a trustee, to be paid to the objects of the bounty
of Howard, after his death, then the declarations were admissible
as to the persons for whom the trust was created.

To the third and fourth points, he charged that a trust may be
proved by parol.

As to the fifth, he charged affirmatively.

To the sixth, he charged that if the paper signed by Howard,
by which payment was postponed for four years, was but a part
of the plan by which the estate was to be concealed from the
commonwealth and her officers, and the defendant was notwith-
standing liable to repay the money at any time after his bonds
became due to the *cestui que* trust, for their maintenance and
support, or to them directly after his death, or to himself during
his life, and the balance to them after his death, that the plain-
tiffs may recover in this action.

To the seventh.—He declined to answer this point in the affirm-
ative; and to the eighth point, that he did not think there is any
thing in this point which will defeat the plaintiffs' right of action.

Errors assigned to the admission of the testimony referred to
in the bill of exceptions; in not answering the defendant's fourth
point; and in the answer of the court to defendant's sixth, sev-
enth and eighth points.

The case was argued by *Graham* and *Biddle* for the heirs at
law of Nicholas Howard.

*Bonham* for defendants in error.

The opinion of the court was delivered by

COULTER, J.—The moral aspect of this case is unfriendly to
the plaintiff in error: so much so that his able and amiable
counsel was constrained earnestly to invoke the cold and freezing
point of the court's judgment.

But neither Judges as frigid as iron or ice, nor the judicial at-
mosphere of Nova Zembla, would save them.

[Tritt *v.* Crotzer.]

· ˙For there are cases in˙which the law is portrayed by a daguerereotype from nature and feeling, and approved by the impulses of a sound conscience : and does not result from abstractions of positive institute found and established in a different and incongruous. state of society. And this is one of these cases. The facts have been found by the jury. They are beyond our reach. But we are confronted with the allegation that the facts submitted to the jury were not sufficient to establish a trust in Tritt, apart from his demerits and villany as it was called, which the court ought to throw out of the case, that a Chancellor on such evidence would not have decreed him to be a trustee. But we are of a contrary opinion. The evidence to sustain a parol declaration of trust, ought to be of a weight and substance, and if competent, ought to be submitted to the jury, a component part of our hierarchy of the judiciary in all its branches, to be carefully weighed and cautiously scrutinized. Even in those cases most completely assimilated to Chancery jurisdiction, a party may demand an issue, by which facts will be ascertained by the jury. trial. In all cases the court have a controlling supervision, and in cases proceeding upon equity principles, the conscience of the court must be satisfied as well as that of the jurors. The remedy, however, where the court is not satisfied, is by granting a new trial. But when the conscience of both is satisfied, as here, the conclusion of fact is final, if made upon competent testimony. The court and the jury together stand in the place of a Chancellor. Was then the testimony competent. That a trust may be proved by parol, and created by parol, is now beyond cavil or doubt.

The evidence of it ought to be satisfactory, and scrutinized with care and caution; as all evidence ought to be which affects the property and rights of individuals; because all parol evidence is subject to some uncertainty and mistake. But still if it produce full and conscientious conviction, it must have its effect. That the declarations of Howard, made in the absence of Tritt, were evidence I have no doubt. They were not of themselves adequate to establish the trust, especially they were not sufficient to prove that Tritt had the fund or was liable for it; but were an item of evidence proper to be admitted in connection with other conclusive evidence that he was fairly chargeable with the fund. Thus it was ruled in Brown *vs.* Dysinger, 1 *Rawle* 408. That evidence of declarations made by a purchaser at sheriff's sale was admissible to establish a trust in the person for whom he was bidding.— Now in this case the court instructed the jury that Howard's declarations were not sufficient alone to charge Tritt with the money, yet if they were satisfied from the other facts, that Tritt had the money, and that it belonged to Howard, that then these declarations were evidence to designate the beneficiary or *cestui que trust.* And this was right, for if the money was Howard's he had

[Tritt *v.* Crotzer.]

a right to declare for whose use it should go before or after his death, which is clearly within the principle of Brown *vs.* Dysinger, and others of the same class. The purchaser at sheriff's sale admitted that he was a trustee of the land, and his declarations were held good to designate the *cestui que trust,* although the beneficiary was not present when they were made. There is little weight in the kindred objection that these declarations of Howard, made in the absence of Tritt, were in opposition to the terms of the bonds, by Tritt to Howard, which Tritt finally produced, to wit: that Tritt was to have four years after Howard's death to pay the money. Because Tritt was trusted by Howard, not only with the money, but with all his papers and these bonds. And because he never produced them until he was driven to the wall by evidence of the trust. Tritt always denied the trust, claimed the money or rather the money and security, as his own, and that they had been bestowed on him by the deceased. But at last when forced to do so by the power of evidence, he produces the bond for protection. But treachery and fraud are never compensated in law. If Tritt had honestly acknowledged the trust after Howard's death, had produced the securities, and declared who were the *cestui que trusts,* he might justly have claimed the extension of the time of payment. But when he denied the trust, claimed the money as his own, and put those to whom the $1800 really belonged at bay, and defied them, he must account as a wrong doer, and be stripped of the cloak he refused to wear. The whole facts are to be taken together, the evidence of the existence of the trust and confidence reposed in Tritt, the evidence of his possession of the money and security, and the evidences designating the *cestui que trust;* also the bonds to Howard, and the writing of indemnity as it is called given by Howard to Tritt, providing that if he did not recover all the mortgage money, he should only be held accountable for what he did recover, and from these the court instructed the jury that they were to form their conclusions. In addition to the bonds and writing themselves, there was evidence that Howard had spoken of such papers, and directed them all to be delivered to Tritt, but they had been seen by witness and that was the fulcrum and lever by which their production was finally effected. But after they are produced and in evidence, with what kind of face does Tritt contend that he ought not to disgorge the money.

And this brings us to the next exception made by the plaintiff, that is, that the *cestui que trusts* cannot recover in this suit. That there ought to have been administration on the estate of Howard, and his administrator would have been the proper person to sue. But if the trust was established in favor of the plaintiffs below— if Howard did deliver the money and securities to Tritt upon the trust and confidence that it should be paid to the plaintiffs below,

upon his death, why should they not recover?　It was their money and securities; they were entitled to them *ex equo et bono*, and by the authority of many cases they had a right to maintain the suit. Trusts are enforced not only against those rightfully possessed of the fund as trustees, but also against all who come into possession of the property with notice of the trust.

The *cestui que trust* in Pennsylvania may bring ejectment in his own name: Kennedy *vs*. Fury, 1 *Dall*. 72; and where it is necessary for the enjoyment of the fund, dedicated to him and his use, why may he not sue for it, when the trust is of personalty and is denied?　Otherwise he would have but a crippled remedy, perhaps none.　The remedy given by the act of 16th June, 1836, sec. 13, is confined to cases where the right to property or money is claimed by two or more persons in the hands or possession of a person claiming no right of property therein.　But here the alleged trustee claimed the right of property in the fund, and denied the trust.　How long must the beneficiary wait until administration is taken on the estate of the donor; and what security has he that the administrator will acknowledge the trust after recovering the fund.　But can the administrator of Howard *recover* the fund if it was dedicated and given in trust in his life time.　In Harrisburg Bank *vs*. Tyler, 3 *Watts* 373, it is ruled that a trust will be enforced in favor of the *cestui que trust*, not only against those who are rightfully possessed of the fund as trustees, but also against others who have obtained it without consideration.　That was an action of assumpsit by the *cestui que trust* against the bank, who resisted the claims on the ground that it was a creditor of the real owner of the trust fund and had a right to retain. But the action was sustained.　In 2 *Vernon* 368, B, a factor, sold cloth on credit and before the money was paid died, indebted by specialty more than his assets would pay.　It was held that the money belonged to the principal, who was entitled to recover, for although at law the right is in the factor, yet in equity he is but a trustee.　There is no evidence whatever of any debts against Howard, except what the judge says of a debt due to Bratton of $60, and burial expenses of $42, which he instructs the jury may lessen the damages to that amount.　This was no injury, but a benefit to Tritt, and he has no right to complain of it.　If there had been creditors, no doubt they would have made their claims manifest.　Indeed there is evidence that there was none.　We cannot reverse a judgment upon mere possibilities.　Bratton testified that he called on Howard shortly before his death, early in 1847, to pay the note of $60, and that Howard told him to go to Tritt.　Soon after Howard died, and Bratton called on Tritt, who told him he had neither money nor effects of Howard, that shortly before his death he had paid him eight hundred dollars, which

he carried to Mrs. Smith's in specie, and that he had cashed notes to the amount of six hundred dollars.

Howard then must have died in 1847. This suit was brought in 1849, and tried in 1850; yet during the three years no whisper of any creditor but this one of $60, which was allowed, and the funeral expenses. This exception then or allegation in favor of creditors, in possibility, is the last impediment after all others have failed, which Tritt endeavors to throw in the path of justice.

But the law is not a science of obstacles and impediments and obstructions in the way of justice and right; but it is a science which teaches the faculty of removing them.

Even if there were creditors, it would not prevent a recovery, unless they interposed their claims, which they might have done by appearing and interpleading in the suit, through the instrumentality of an administrator on Howard's estate: Coates *vs.* Roberts, 4 *Rawle* 100. But if they neglect to manifest and assert their rights, supposing any creditors to exist, of which we have not the slightest evidence, are the *cestui que trusts* to be forever postponed? A stronger case than this may be found in Wallace *vs.* Clingen, 9 *Barr*, of a recovery in assumpsit against a stakeholder as there called, who had money in his hands; although he alleged that he might thereby be exposed to the cross fire of another, who as the stakeholder alleged, might claim the money, and the decision went upon the ground that it was the duty of such person to appear and interplead, or be forever barred.

There is no weight in the point made that the court below erred in not instructing the jury that if the fund was transferred to Tritt with a view to deprive the State of the collateral inheritance tax, the transfer and the trust was void, and the plaintiff could not recover. That matter is settled by Baker and Williamson, 4 *Barr*, and because, by the statute, the payment of any such tax is to be deducted from the fund, which would therefore be liable in the hands of the *cestui que trust*. If the State chooses to enter into the arena and contest, as to the creation of the trust being fraudulent, the fund is as safe in the hands of the *cestui que trust*, as in the hands of the fraudulent trustee.

If they do not choose to make that assertion, the fraudulent trustee cannot do it, as the means of defeating the *cestui que trust* in this action, and retaining the fund in his own clutches.

The endorsement on the bonds of Tritt in his own hand writing were proper evidence on the part of the plaintiff below for the purpose offered, that is, as tending to show that the bonds were in Tritt's possession. It did not follow that they were conclusive evidence of the fact, but under all the circumstances, they leaned that way, and were relevant and competent for that purpose. The admission of the evidence was only an increment in the

whole sum of fraud, an item in the account which was properly considered in the settlement. This trust was created in the life time of Howard, and then established in favor of the objects of his bounty. It may be admitted that he still held the legal interest or estate, and as the trust clings to the legal estate he may have interfered with the fund in his life. But it was irrevocable at his death in favor of the *cestui que trust.* They were entitled to it, by the award of the jury establishing the trust, and the approbation of the court. Tritt denied the trust, concealed the papers, and claimed the fund as his own. The court below conformed, in my opinion, to enlightened conscience and morals, sanctioned by law and equity.

Judgment affirmed.