## Robinson, Appellant, *v.* Powell.

*Trusts and trustees—Resulting trust—Gift—Evidence.*

In an action of assumpsit to recover the sum of $29,000 alleged to have been deposited in defendant's bank account by a decedent to be given to plaintiff, a widow of decedent's nephew, after decedent's death, it appeared that defendant had lived many years in the decedent's household as a housekeeper without fixed wages, and had been regarded as a member of the family. She had a bank account in which different members of decedent's family had deposited money from time to time. As to the money in controversy defendant testified that the decedent had said at the time it was for her to keep. The decedent's attorney also testified that decedent said that the money was the defendant's, and that he desired to make provisions for her independently of his family. The attorney remonstrated with him

as to the amount of the gift. Plaintiff produced two witnesses one of whom testified that decedent had declared to defendant that he wanted to leave $25,000 with defendant for plaintiff at his death. The time when the statement was made was left in doubt. The other witness, a stranger to decedent's household, testified that decedent had declared to her that he had given defendant in her bank account $29,000 which she was to give to plaintiff. Two witnesses testified that at the time this alleged interview was held, the decedent was so ill that no strangers were allowed to see him. Other evidence tended to show that decedent had made some other provisions for plaintiff and that he had expressed regret that he had done so much for her. *Held*, that a verdict and judgment for defendant should be sustained.

The evidence to establish a parol trust must be clear, precise and indubitable.

Argued Oct. 25, 1904. Appeal, No. 99, Oct. T., 1904, by plaintiff, from judgment of C. P. No. 1, Allegheny Co., Sept. T., 1900, No. 538, on verdict for defendant in case of Annie J. Robinson v. Jane Powell. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT, POTTER and THOMPSON, JJ. Affirmed.

Assumpsit to recover money had and received. Before MAC-FARLANE, J.

The facts appear by the opinion of the Supreme Court.

The court charged in part as follows:

[In the ordinary case, while the burden of proof is upon the plaintiff to make out his case, he is only required to prove it to the satisfaction of the jury by the weight of the evidence. In this case, and all similar cases, the law imposes a stricter measure of proof, and the reason for it is illustrated by this case as well as any one that could be given.

Whether it was an absolute gift or gift with a trust attached, Thomas Robinson parted with all his interest in that money, and from February 19, 1898, he had no more control over it than any of you men have. To offset such a transaction as that, to attach to it something that does not appear upon the face of it and read into it a trust for another person requires, as I say, a much stricter measure of . . . . proof than in the ordinary case.

It is a question of evidence, a question of fact to be decided by you under practically two rules of evidence: The first is

that to constitute a trust here the evidence must be clear, precise, unequivocal and satisfactory. It must be such as convinces you that there was a trust for Annie Robinson beyond a reasonable doubt. The ordinary expression is, the evidence must be indubitable. Indubitable means without doubt.

In the second place to support a verdict for the plaintiff before she can recover here, there must be evidence of this trust. That does not mean evidence of the deposit, but evidence that it was intended for Annie Robinson and not for Jane Powell, the evidence of two witnesses, or in the absence of two of one witness, with corroborating circumstances. In this case, as I understand it, there is only one witness who testifies to the amount of this money and that it was deposited in Jane's account—that is Miss Rollins. Then there must be corroborating circumstances before you could find a verdict for the plaintiff, even if you believed her story absolutely.

The reason for that is that this is practically a proceeding in equity. In the ordinary equity case it is heard before a judge sitting as a chancellor without the instruction of a jury, and he decides the facts. Had this been a bill in equity, filed to have a trust declared and been heard by me, I would have been bound by exactly the same rules that you are.] [1]

[Counsel for plaintiff have asked me to take this case from the jury on the ground that the case does not come up to the technical requirements, and especially as to the exact amount and as to the corroboration in all details. I have concluded to submit the case to you, reserving the question of law for future consideration, whether there is any evidence which would entitle the plaintiff to recover. By leaving the case to you I do not express any opinion as to the credibility of the witnesses; that is for you; and my future duty would be, in case you render for the plaintiff, to decide whether certain legal requirements had been complied with. You will, therefore, consider and decide the case as if there was no such reservation, and with no idea that perhaps, if you were wrong, the court would hereafter correct you. That is not the purpose of the reservation.

It will be necessary for you to find, before you could find a verdict for the plaintiff, every part of the trust. No part can be inferred; the plaintiff has to prove every part of it.

The fact, if you believe it to be a fact, that Thomas Robinson expressed his intention to provide for Annie Robinson, even if he said that he wanted to deposit $25,000 in Jane Powell's account to be given to Annie, any expression of his future intention does not create a trust.

It is important as corroboration of Miss Rollins' testimony, to which I now wish to particularly direct your attention, for without Miss Rollins' testimony the plaintiff's case would fail.

There is the testimony of one witness, and if it is clear, precise and satisfactory, and comes up to the standards I have given you, you have one step towards establishing the trust, but it would be necessary that she be corroborated. Has she been corroborated? The fact that Mr. Robinson in his lifetime deposited about $29,000 to Jane Powell's account is not a corroboration of the trust, that is, the trust that is sought to be established. That fact alone, as I have explained to you, on the face of it shows an absolute gift.

The corroboration as to the trust which is relied upon by the plaintiff is the testimony of these three witnesses, Squire Simmons and his son and the plaintiff herself. That testimony as far as I have noticed it—I think it is substantially correct, although it may lack the exact words—is first that of Annie Robinson that in December, 1897, the old gentleman was at her house in Beaver county, and that he said he would leave her enough to live on; did not want her to keep boarders any longer; provide for her and her children, and that he would leave it with somebody, and suggested that she send somebody to him, I believe, something of that kind.

She suggested Squire Simmons and she did send Squire Simmons to him. The squire then says that about February 1, 1898, he and his son went out to the old gentleman's house, and that in Jane Powell's presence, or at least while she was in the room—part of the time she was in the adjoining room with the door open—he said that he wanted to leave some money for Annie and the children so that she and the children will not want and said: " I want to leave it with you." The squire said he would rather have it left with someone else. He called Jane in and said: " I want to leave $20,000 or $25,000 for Annie after my death; don't want Squire Robinson to know about it because he would not like it. I can trust Jane; she is honest."

That when they were leaving, at the door, the old gentlemen, in the presence of Jane, the son being there, said : " Now I will leave enough money with Jane so that Annie will not want." The boy said that he had heard them talking about money and about Annie ; that he could not hear all the conversation, but when they were leaving at the door the old gentleman said. "All right, Jimmie, I will leave enough with Jane that Annie will not come to want."

Those expressions " I will leave enough money with Jane that Annie will not come to want," would not establish a trust, because it might be that he was going to leave it with Jane and Jane would not take care of Annie, or something of that kind. It would not amount to a statement that he was going to leave this exact amount of money to be hereafter given to Annie, but the expression that he was going to leave $20,000 or $25,000 with Jane for Annie after his death or that it was to be given to Annie after his death is more definite, except as to the amount; it does not quite fit the $29,000.  It is for you to say whether this is satisfactory corroboration of Miss Rollins' testimony. You will take into consideration all the circumstances, interest and bias of witnesses on both sides, and the fact that Miss Rollins was not called at the former trial, and the other matters in the case that have been discussed by counsel.

Then looking at this will, because it possibly throws a great deal of light upon this, we find that he gave to charities $23,000, that he gave to relatives by special and definite legacies, naming the parties, all relatives I believe, $19,500.  So you have $28,000 given in his lifetime to charities and relatives ; the homestead and $39,000 to Jane ; by his will $23,000 to charities and by special legacies to relatives $19,500.  Then if he had $100,000 cash coming into the hands of the executors, that would leave for his lawful heirs, who were to get the residue of the estate, $57,500.  In all, under the will to relatives, including possibly the Mantle boy, $500 (I believe all the rest are relatives), $77,000. As he happened to die within thirty days after the execution of the will, the $23,000 went to relatives, but for the purpose for which I am directing your attention to these facts that is significant.  Now these things are to be considered by you in determining the question whether he meant this money to go to Jane Powell or to Annie Robinson, the amount of his estate, what he was doing with it and what his relatives were given.

She says that the old gentleman told her that she was going to live in comfort, that instead of being a servant she was hereafter to be a mistress; she was to keep her own hired girl and have a house.

She says that her relations to the family had been very close, practically brought up with the family as one of them, taking care of them in their sickness and doing all the work, and that this old gentleman voluntarily gave her his money for her support. You know from your own judgment and experience that is not an uncommon thing.

If her story is true' that is an end of the case. The burden is not upon her. The question is, has the other side overcome her position? Have they overcome the face of this bank book, the face of this transaction? She is corroborated by Mr. Brown. If Mr. Brown's story is true it is very difficult to reconcile the story of Miss Rollins, that perhaps two days before, about March 15, Mr. Brown being out there on the 14th, he told her this money was deposited in Jane's account to be given to Annie after his death.

The only other testimony to which I will call your attention is that of the witness who testified in effect that the old gentleman has said that he proposed to do something for Annie Robinson, that he had paid her debts for something like $4,000, and he was sorry he had done it and would not do it again. That is a scrap of testimony tending to corroborate the position of the defendant.] [2]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* among others were (1, 2) above instructions, quoting them.

*R. S. Martin*, with him *W. G. Crawford*, for appellant.—The court below seems to have proceeded on the theory that the bank book of defendant was a written instrument which plaintiff could only vary or contradict by the degree of proof required in a proceeding in equity, and that it amounted to a gift of the money to defendant.

Plaintiff contends that this was error; first, because she was not a party to the instrument (bank book), and second, that the bank book is not within the class of written instruments

to which the equity rule of evidence applies, as book accounts, book entries and bank books are not regarded as written instruments which cannot be affected by parol: Chapin v. Cambria Iron Co., 145 Pa. 478; McConomy v. Reed, 152 Pa. 42; Wingate v. Mechanics' Bank, 10 Pa. 104.

We submit that the burden of proof under the circumstances to show a gift of the money to her was on defendant, because when the parties to a gift inter vivos or voluntary trust occupy certain confidential relations towards each other and the gift is made by the confiding party to the other, a presumption of fraud or undue influence more or less strong arises, either from the mere relation or when it is accompanied by suspicious circumstances, and the burden is thrown upon the donee to show that the transaction is fair and conscientious, and that he took no advantage of his influence or superior knowledge: Miskey's Appeal, 107 Pa. 611; Clark v. Clark, 174 Pa. 309; Cummings' Executors v. Meaks, 2 Pittsburg Rep. 490; Hiester v. Laird, 1 Watts & Sergeant, 245; First Nat. Bank of DuBois City v. First Nat. Bank of Williamsport, 114 Pa. 1.

*R. A. Balph,* with him *James Balph,* for appellee.—To set this gift aside, thus solemnly made and so clearly evidenced in writing, can only be done by clear, precise and indubitable evidence, and by the testimony of two witnesses, or one witness and corroborating circumstances. This is not unreasonable but a most salutary rule: Brawdy v. Brawdy, 7 Pa. 157; Todd v. Campbell, 32 Pa. 250; Earnest's App., 106 Pa. 310; Glass Co. v. Storms, 125 Pa. 268; Hoopes v. Beale, 90 Pa. 82; Hartley's Appeal, 103 Pa. 23; Phillips v. Meily, 106 Pa. 536; Cullmans v. Lindsay, 114 Pa. 166; Tritt v. Crotzer, 13 Pa. 451.

To establish a trust by the declaration of the grantor it must have been made prior to, or contemporaneous with, the conveyance, for it is against reason and the rules of evidence to allow a man who has parted with all interest in an estate to charge it with any trust or incumbrance after such conveyance: Perry on Trusts, sec. 77; Ivory v. Burns, 56 Pa. 300; Bennett v. Fulmer, 49 Pa. 155; Wallgrave v. Tebbs, 2 Kay & Johnson, 313.

OPINION BY MR. JUSTICE THOMPSON, December 31, 1904:

The appellant undertook to impress upon a gift made to appellee a parol trust. In the statement filed by her appellant avers that on February 19, 1898, Thomas Robinson, since deceased, placed in the hands of the appellee a sum of money, $29,360, upon the trust to pay the same to the appellant upon the death of decedent, and that appellee accepted the trust, received the money and agreed to pay the same to the appellant.

Thomas Robinson, who had accumulated a fortune of $250,000, died April 4, 1898. Appellee had a bank account in her name in the First National Bank of Allegheny. On February 19, 1898, decedent closed his own account with that bank and deposited in the same, to the credit of the appellee, $19,364.37, and on the same day he credited her account with $10,000, thus crediting appellee with the total sum of $29,364.37. The last sum of $10,000 he drew from the Farmers' National Bank of Pittsburg. Appellee's account was to bear interest at the rate of three per cent. Her account had been running for some time previous to these two deposits, and money had from time to time been deposited to her credit. The deposit of $29,364.37 to the credit of appellee, the delivery of the bank book and the unqualified declaration of decedent to appellee in the presence of Mr. Brown, his counsel, that the money was for her " to keep," clearly evidence an absolute gift to her. Appellant, however, sought to strike down this gift as such and so evidenced by the writing, and so to modify it as to establish in her favor a parol trust of the money so deposited. Thomas Robinson died April 4, 1898. Appellant testified that in December, 1897, he told her that he intended to leave her something, and that about this time he paid the sum of $4,800 for her on account of an indebtedness which she had contracted; that she went to see him in March, 1898, and that he was so sick that she was unable to do so. Several of appellee's witnesses testified that decedent had declared in an emphatic manner that he had done enough for appellant and would give her no more money. One of appellant's witnesses testified that decedent said to appellee : " I want to leave $25,000 with you here for Annie at my death, and I do not want Thomas or anyone else to know anything about it." He is unable to fix the date of the interview, but thought it not later than February 1,

1898.   It is somewhat significant that he took occasion subsequent to the death of decedent, at the instance of appellant for whom he was acting as a quasi legal adviser, to call upon appellee.   That he did so, he said, after Squire Robinson had told him a lady in Allegheny had stated to him (Robinson), that appellee had a check for that amount for appellant.   It is also significant that Squire Robinson, the husband of appellant, was the executor of the decedent's estate for more than a year before his death and never mentioned or suggested a trust to his coexecutor.   The appellee testifies positively that this witness was not at decedent's house in the year 1898, but had been there a year previous.   She denies expressly that any such conversation took place.   With the distinctive denial of the appellee, coupled with a reasonable doubt as to the interview in question, and its date, this testimony lacked substantial weight.   But at most it would only indicate an intention to do something for appellant, who was not a relative by blood but the widow of his nephew, and if he once had such intention the proofs were uncontroverted that having given appellant $4,800 he repeatedly declared that he would give her no more, and manifestly changed his mind if he ever had any intention to give her more.

Appellant substantially rested her proof of a parol trust upon the testimony of Miss Rollins.   She testified that she called upon decedent about the middle of March, 1898, while decedent was in bed sick, and he said to her:  " I give Jane Powell (appellee) here the homestead and money to keep her as long as she lives.   I have also given her in her bank account $29,360, which she is to give Annie Robinson upon my death."   She states that she gave an account of this interview to appellant in September, 1898, yet she was not called by appellant as a witness when the case was before arbitrators and when it was on trial once before the present one and no reasonable explanation therefor is given by the appellant.   Her action in this regard throws around the testimony of this witness an atmosphere of suspicion and doubt.   She testifies that she called upon decedent and remained with him about fifteen minutes and this was the only time she had ever called upon him.   The evidence shows that at that time decedent was so ill that strangers were not admitted to see him.   There is no

proof whatever corroborating her in regard to the visit in question, and appellee testifies that she was not at the house at that date or any other date and had never visited the house. That during the three weeks prior to decedent's death appellee, decedent's niece and a little girl were in constant attendance upon him. That during the last two or three weeks of his illness he was very ill and no strangers were permitted to see him. With the testimony of Miss Rollins uncorroborated as to the visit; with circumstances that point with suspicion as to its reliability; with the fact that at the time that it was alleged to have taken place decedent was in a condition of critical illness that permitted only near relatives to see him and with the clear and explicit denial by the appellee, it is plain that the proof of a parol trust was not clear, precise and indubitable. But even if doubt be raised by this testimony, it was absolutely dissipated by the testimony of Mr. Brown, the attorney of decedent. He testifies: " He talked to me quite at length about her. He said that she had lived with him a great many years, worked hard, taken care of the home, looked after himself and brothers and he wanted to know that she would be provided for beyond any question, and in no sense dependent upon his relatives after he was dead and gone. At the same interview he sent Jane Powell out to get the bank book and she came in with that bank book that was in her own name, as I recollect it, in that First National Bank of Allegheny, and the explanation of that was because I was remonstrating about the provision he had made for this girl, and he wanted to assure me that he had done far more than that for Jane Powell, and that bank book I recall distinctly had at least one, and I think two deposits of $10,000 each, and then on a date, which was probably in February of the same year, there was deposited the sum of $29,000 and odd dollars in cash, and when I saw the deposit I was literally amazed, and I undertook to try to persuade him that he was doing himself an injustice, that he might get well and might regret that, and that it ought to be undone, and he said no, that he wanted to be sure that she would be provided for, and it was then that he told me of the three gifts that he made to the nephews." And again, when asked whether anything had been said by decedent about his intending this money as a gift in trust for Annie Robinson,

he replied : " I have said to you distinctly that he informed me that he had made this deposit for Jane Powell." When asked whether there was anything said about making provisions for Annie Robinson, he said: " Never." " The only expression he ever gave was the one I gave you in 1896, when he said that was the end of his gifts to her," and in response to the question whether decedent called witness' attention to the deposit of $29,000 he said: " Yes, sir, he did that by way of justifying the gift that he was making to this Bowers girl, and to my knowledge he gave her $20,000."

Upon such proofs, giving the widest latitude to the vagaries of the mind, no chancellor with a gleam of intelligence would venture, upon a bill filed, to declare a parol trust in behalf of appellant.

In the case of Earnest's Appeal, 106 Pa. 310, it was said by Mr. Justice CLARK: " In a long line of cases it has been held that to establish a resulting trust, the evidence must be clear, explicit and unequivocal; the rule is so well established that a citation of the authorities in extenso seems unnecessary. We may refer however to McGinity v. McGinity, 63 Pa. 38 ; Nixon's Appeal, 63 Pa. 279 ; Lingenfelter v. Richey, 62 Pa. 123 ; Kistler's Appeal, 73 Pa. 393 ; Fricke v. Magee, 10 W. N. C. 50 ; Buchanan v. Streeper, 11 W. N. C. 434.

" Whether therefore a trust is deducible in any given case, from the nature of the transaction as a matter of actual intent, is susceptible of oral proof ; but he who alleges the trust, takes the burden of establishing it, and all the essential requisites of that trust must be shown by clear, explicit and unequivocal proof."

It is contended by the appellant that the learned trial judge erred because he cast the burden of proof upon her when he charged: " It is a question of evidence, a question of fact to be decided by you under practically two rules of evidence : The first is that to constitute a trust here, the evidence must be clear, precise, unequivocal and satisfactory. It must be such as convinces you that there was a trust for Annie Robinson beyond a reasonable doubt. The ordinary expression is, the evidence must be indubitable. Indubitable means without doubt. That does not mean without any doubt; it means a doubt which rises from the evidence, which is reasonable and

would cause an honest mind to hesitate before arriving at a conclusion."

The written evidence, the entries and the bank book, clearly establish an absolute gift to the appellee and the appellant undertook to change in effect that writing from such gift to a trust in her favor. When such is sought to be done the rule is well settled that the proof of it must be clear, precise and indubitable.

In the case of Cullmans v. Lindsay, 114 Pa. 166, Mr. Justice CLARK said : " The parol evidence, however, which will be effective to reform a written instrument, in such a case, must, it is said, be clear, precise and indubitable; that is to say, it must carry clear conviction to the minds of the jurors that the witnesses are credible, that the facts are distinctly remembered and are truly and accurately stated ; and to the mind of the court, that if the facts alleged are true, the matters in issue are definitely and distinctly established: Spencer v. Colt, 89 Pa. 314; Honesdale Glass Co. v. Storms, 125 Pa. 268; Tritt v. Crotzer, 13 Pa. 451.

This is not a case where the rule that book entries and bank books are not to be attacked by parol proof, but an attempt to set up a parol trust to change the effect of a gift evidenced by the entries on the bank books. The learned trial judge, therefore, cannot be convicted of error in charging as he did, and thus putting the burden of proof upon the appellant. It was also contended by the appellant that, owing to the relations of the appellant with the decedent, this being a gift inter vivos, the burden of proof was upon the appellee to show the fairness of the transaction. It may be said that where there are certain relations of confidence, accompanied by peculiar circumstances, a donee may be required to establish the fairness of the transaction, by which he or she is benefited : Miskey's Appeal, 107 Pa. 611. But in the present case there was nothing in the relations that existed between the appellee and decedent to occasion any suspicion whatever, and there certainly were no circumstances whatever of a doubtful character connected with the gift in question. The decedent understood and knew exactly what he was doing and what he intended to do. Mr. Brown testified that decedent talked to him at length about appellee. He said that she had lived for a great many years

in the family, had worked hard, taken care of him and looked after himself and his brothers.    That he wanted to know that she would be provided for and in no way be dependent upon his relations after he was gone.    Appellee testified that she was treated as a member of the family; that she had had charge of the house for more than thirty years without any stipulated wages and that members of the family were in the habit of depositing money to her credit.    The case is therefore simply one in which the decedent, a very old man, realizing that appellee had practically devoted her life to the service of himself and his family and recognizing the value of her services, desired to provide for her in her old age against want in the event of his death.    It is futile to argue that there are any questionable circumstances connected with the gift or any suspicions surrounding it.    If so it is clear that there cannot be the slightest warrant for the suggestion that the burden of proof was cast upon her to show the fairness or the propriety of the gift.

It is also assigned for error that the learned trial judge erred in affirming the defendant's fourth point, which point was as follows : " If the jury believe the testimony of John D. Brown, Esq., and do not believe that of Miss Rollins, the verdict must be for the defendant " because it tended to make the case turn upon a single witness.    Such was not the result in the present instance and clearly if the jury disbelieved Miss Rollins there was not the slightest foundation for appellant's claim and if they disbelieved her but believed Mr. Brown, there was no evidence whatever to warrant the conclusion that a parol trust had been established.

The assignments of error are not sustained and the judgment is affirmed.